IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION


BEVERLY BLOUNT-HILL, et al.,            :

       Plaintiffs,                   :

                                  Case No. 3:04cv197

       vs.                          :

                             JUDGE WALTER HERBERT RICE

SUSAN T. ZELMAN,                        :
Superintendent of Public Instruction    :

       Defendant.                    :


---

DECISION AND ENTRY SUSTAINING IN PART AND OVERRULING IN
PART DEFENDANT'S MOTION TO DISMISS (DOC. #67)

---

       Plaintiffs bring this litigation challenging the constitutionality of certain Ohio

statutes applying to charter schools.[1]  All Plaintiffs but one are parents of children

and stepchildren who attend and/or have attended the Dayton Public Schools.[2]

They bring this litigation on behalf of themselves and their children.  The other

Plaintiff is Patricia Lynch, president of the Dayton Education Association ("DEA"),

the labor union representing Dayton's teachers.  Lynch brings her claims on behalf

---

[1]The Ohio General Assembly refers to charter schools as "community schools."
See Chapter 3314 of the Ohio Revised Code.  This Court has used that term and
the more conventional "charter schools" interchangeably.

[2]The Plaintiffs contrast public schools such as the Dayton Public Schools with
charter or community schools by referring to the former as "traditional public
schools."  This Court will follow that convention.

of herself, the members of the DEA and the union, itself.  She alleges that she and the members of the DEA were harmed by the conduct set forth in Plaintiffs' most recent pleading.

Ohio's community or charter schools are created pursuant to Chapter 3314 of the Ohio Revised Code.  Such schools are public schools, albeit run by unelected governing bodies, rather than elected school boards, and exempted from a number of laws controlling traditional public schools.  Ohio Rev. Code §§ 3314.01(B); 3314.02(E); 3314.04.  Charter schools are allowed in any school district under an academic emergency or in a state of academic watch, as well as in the "big eight school districts."  Ohio Rev. Code § 3314.02(A)(3).  Thus, the "big eight school districts" differ from all others in the state of Ohio, because community schools can locate therein regardless of whether they are under an academic emergency or in a state of academic watch.  Community schools cannot be located in any other district without such academic problems.  The "big eight school districts" are defined by their number of students; they must have an average daily attendance of at least 12,000 students, and high poverty rates, with at least 30% of a given district's students qualifying for the "Ohio Works First" anti-poverty program.  Ohio Rev. Code § 3314.02(A)(3).  The "big eight school districts" are Cleveland, Columbus, Cincinnati, Toledo, Akron, Dayton, Canton and Youngstown.[3]  As to funding, the parties agree that community schools receive more "formula aid" from the state, per student, than do traditional public schools.  In addition, a traditional public school district, having a student residing within its boundaries attending a

_____

[3]All of those districts, except Canton, have more minority than non-minority students.

community school, must pay the community school the state formula aid for that student.

In their Third Amended Complaint, the Plaintiffs outlined their constitutional challenges to Ohio's community school statutes:

2. The funding provision of the Community Schools Law, as adopted in R.C. § 3314.08 and the funding mechanism for public schools as it relates to community schools, and as implemented by Defendant, violates the Equal Protection clause of the Fourteenth Amendment to the United States Constitution, in contravention of 42 U.S.C. § 1983, because it treats similarly situated students (Traditional Public School District students and community school students) in an unfair, unequal and unconstitutional manner.

3. Further, the Community Schools Law and funding mechanism for public schools as it relates to community schools and as implemented by Defendant, violates the Equal Protection clause of the Fourteenth Amendment of the United States Constitution, in contravention of 42 U.S.C. § 1983, in two additional and separate ways:

(A). The minority students who remain in Traditional Public Schools, as a group, are discriminated against for no valid governmental purpose when compared to the group of minority students attending community schools operating in the same Traditional Public School District. The minority students who attend a community school, as a group, receive a higher percentage of state share of state Formula Aid Per Pupil while the group of minority students remaining in the Traditional Public School District receive a lower percentage of state share of state Formula Aid Per Pupil.

(B). The legislative scheme of the Community Schools Law is intentionally skewed toward the creation and authorization of community schools in Traditional Public School Districts whose students are predominantly African American or other minorities. For no valid governmental purpose, minority students who remain in Traditional Public School Districts where the Defendant has authorized start-up community schools retain less state share of state Formula Aid than compared to the group of non-minority students attending Traditional Public Schools in Districts that are precluded, under the terms of the Community Schools Law, from having any entity other than the Local Board of Education from sponsoring a start-up community school in the District.

4. The funding mechanism for public schools contained within and affected by the Community Schools Law as implemented by Defendant also violates

the Equal Protection clause of the Fourteenth Amendment of the United States Constitution, in contravention of 42 U.S.C. § 1983, because it causes all students remaining in a Traditional Public School District in which community schools are operating to unconstitutionally rely on an increased percentage of local property taxes to support their public education in the Traditional Public School District.

5. The funding mechanism for public schools contained within and affected by the Community Schools Law as implemented by Defendant also violates the Equal Protection clause of the Fourteenth Amendment of the United States Constitution, in contravention of 42 U.S.C. § 1983, because Traditional Public School Districts in which start-up community schools are established retain significantly less state share of state Formula Aid Per Pupil while similarly situated Traditional Public School Districts without community schools located in their District suffer no concomitant reduction of the state share of state Formula Aid Per Pupil. As a result, Traditional Public School Districts that have start-up community schools established in their District have an increased reliance on the percentage of local property taxes to support their public education while Traditional Public School Districts that do not have start-up community schools located in the District do not have any increased reliance on local property taxes.

6. In addition, the Community Schools Law itself, and through its implementation by Defendant, violates the procedural Due Process clause of the Fourteenth Amendment of the United States Constitution, in contravention of 42 U.S.C. § 1983, because it denies Traditional Public School District students and their parents of notice and hearing prior to diverting state funds for their traditional public education, in which these students have a valid and recognized property interest.

Doc. #66 at ¶¶ 2-6.

In their most recent pleading, Plaintiffs have set forth five claims for relief, to wit: 1) a claim under 42 U.S.C. § 1983, alleging that the Defendant has violated the Equal Protection Clause of the Fourteenth Amendment, by implementing a funding mechanism under which students at community schools receive a higher share of state Formula Aid, than students at traditional public schools (Doc. #66 at ¶¶ 230-36) (First Claim for Relief); 2) a claim under § 1983, alleging that the Defendant has violated the Equal Protection Clause of the Fourteenth Amendment through the funding mechanism for charter schools which favors minority students

who attend charter schools with a greater share of the state formula aid funds than those minority students who remain in traditional public schools (id. at ¶¶ 237-40) (Second Claim for Relief); 3) a claim under § 1983, alleging that the Defendant has violated the Equal Protection Clause of the Fourteenth Amendment, by creating two classes of traditional public school districts, one class that is predominantly minority and the other that is predominately white, and treating students in predominantly white districts better than those who are in predominantly minority districts, by requiring predominantly minority districts to use state formula aid to pay to educate students at community schools, all of which constitutes discrimination on the basis of race (id. at ¶¶ 241-52) (Third Claim for Relief); 4) a claim under § 1983, alleging that the Defendant has violated the Equal Protection Clause of the Fourteenth Amendment through the funding mechanism which requires students attending traditional public schools in districts in which community schools have been created to rely more heavily on local property taxes to fund their education than students in traditional public schools in districts in which community schools have not been created (id. at ¶¶ 253-58) (Fourth Claim for Relief);[4] and 5) a claim under § 1983, alleging that the Defendant has violated

_____

[4]Plaintiffs have alleged that each of their claims under the Equal Protection Clause also constitutes a substantive due process claim. This Court concludes that the Plaintiffs have failed to set forth claims under the substantive component of the Due Process Clause. In United States v. Martin, 438 F.3d 621, 637 (6th Cir. 2006), the Sixth Circuit reiterated that the conduct of government officials must, at a minimum, "shock the conscience" to constitute a violation of substantive due process. Id. at 637 (citing Collins v. City of Harker Heights, 503 U.S. 115, 126 (1992)). Simply stated, no allegation set forth in the Plaintiffs' Third Amended Complaint shocks the conscience. Moreover, based upon reasoning set forth below, concerning Plaintiffs' procedural due process claim, this Court concludes that the Plaintiffs have not suffered the deprivation of a protected property interest, a necessary predicate for any claim under the Due Process Clause,

the Due Process Clause of the Fourteenth Amendment, by the diversion of funds from the traditional education of their children without notice and an opportunity to be heard (id. at ¶¶ 259-66) (Fifth Claim for Relief).[5]

Plaintiffs seek declaratory and injunctive relief. They have sued the Defendant, the Superintendent of Public Instruction for the state of Ohio, in her official capacity alone. It is well-settled that a claim against an officer or employee of a governmental entity, in his or her official capacity, is a claim against the governmental entity itself. See e.g., Kentucky v. Graham, 473 U.S. 159 (1985). However, in League of Women Voters of Ohio v. Brunner, 548 F.3d 463 (6th Cir. 2008), the Sixth Circuit explained that a claim against a state official in her official capacity is not necessarily barred by the Eleventh Amendment:

> The Eleventh Amendment generally bars suits by citizens of a state against a state in federal court. U.S. Const. amend. XI; Grinter v. Knight, 532 F.3d 567, 572 (6th Cir. 2008). There are, however, numerous exceptions to this rule. Ernst v. Rising, 427 F.3d 351, 358-59 (6th Cir. 2005) (en banc). One exception applies when a state official is sued in his official capacity for purely injunctive relief. Ex parte Young, 209 U.S. 123, 155-56 (1908); Hamilton's Bogarts, Inc. v. Michigan, 501 F.3d 644, 654 n. 8 (6th Cir. 2007).
> The test for determining whether the Ex parte Young exception applies is a "straightforward" one. Verizon Md., Inc. v. Public Serv. Comm'n

substantive or procedural.

[5]In their memorandum (Doc. #70) opposing the Defendant's Motion to Dismiss, Plaintiffs occasionally refer to decisions by Ohio courts applying the Ohio Constitution. This Court does not interpret the Plaintiffs' Third Amended Complaint or those references as an attempt to state a claim against the Defendant under the law or the constitution of Ohio. If the Plaintiffs had attempted to set forth such a claim against the Defendant, this Court would have been required to dismiss same. In Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89 (1984), the Supreme Court held that the Eleventh Amendment prohibited a federal District Court from ordering state officials to conform their conduct to comply with state law.

of Md., 535 U.S. 635, 645 (2002).  The court considers "whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective."  Id. (alteration in original) (citation omitted); Dubuc v. Mich. Bd. of Law Exam'rs, 342 F.3d 610, 616 (6th Cir. 2003).  The focus of the inquiry remains on the allegations only; it "does not include an analysis of the merits of the claim."  Verizon, 535 U.S. at 646; Dubuc, 342 F.3d at 616.

Id. at 474.

This case is now before the Court on the Defendant's motion, requesting that the Court dismiss Plaintiffs' Third Amended Complaint, in accordance with Rule 12(b)(6) of the Federal Rules of Civil Procedure, for failure to state a claim upon which relief can be granted.  See Doc. #67.  As a means of analysis, the Court will initially review the procedural standards it must apply whenever it rules on a motion to dismiss filed in accordance with Rule 12(b)(6), following which it will turn to the parties' arguments in support of and in opposition to dismissal of the Plaintiffs' five claims, addressing them in the above order.  The Court will, however, discuss the First, Second and Fourth Claims for Relief together.

In Prater v. City of Burnside, Ky., 289 F.3d 417 (6th Cir. 2002), the Sixth Circuit reiterated the fundamental principles which govern the ruling on a motion to dismiss under Rule 12(b)(6):

> The district court's dismissal of a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is also reviewed de novo.  Jackson v. City of Columbus, 194 F.3d 737, 745 (6th Cir. 1999), overruled on other grounds by Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002).  When deciding whether to dismiss a claim under Rule 12(b)(6), "[t]he court must construe the complaint in a light most favorable to the plaintiff, and accept all of [the] factual allegations as true." Id. (citation omitted).

Id. at 424.  In Swierkiewicz v. Sorema N.A., 532 U.S. 506 (2002), the Supreme Court noted that Rule 8(a)(2) of the Federal Rules of Civil Procedure merely

requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Id. at 212. Therein, the Court explained further:

> Such a statement must simply "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Conley v. Gibson, 355 U.S. 41, 47 (1957). This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims. See id., at 47-48; Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 168-169 (1993). "The provisions for discovery are so flexible and the provisions for pretrial procedure and summary judgment so effective, that attempted surprise in federal practice is aborted very easily, synthetic issues detected, and the gravamen of the dispute brought frankly into the open for the inspection of the court." 5 C. Wright & A. Miller, Federal Practice and Procedure § 1202, p. 76 (2d ed. 1990).

Id. at 512-13. In Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), the Supreme Court rejected the standard established in Conley v. Gibson, 355 U.S. 41, 45-46 (1957), that a claim should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." 550 U.S. at —. In Association of Cleveland Firefighters v. City of Cleveland, Ohio, 502 F.3d 545 (6th Cir. 2007), the Sixth Circuit explained the Supreme Court's holding in Twombly:

> The Supreme Court has recently clarified the law with respect to what a plaintiff must plead in order to survive a Rule 12(b)(6) motion. Bell Atl. Corp. v. Twombly, — U.S. —, 127 S.Ct. 1955 (2007). The Court stated that "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 1964-65 (citations and quotation marks omitted). Additionally, the Court emphasized that even though a complaint need not contain "detailed" factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." Id. (internal citation and quotation marks omitted).

<u>Id</u> at 548.  Two weeks after it had decided <u>Twombly</u>, however, the Supreme Court explained:

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Specific facts are not necessary; the statement need only "'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. —, — (2007) (slip op., at 7-8) (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957)).

<u>Erickson v. Pardus</u>, 551 U.S. 89, — (2007).

Rule 12(d) provides that if "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."  Herein, the parties have appended a number of documents as exhibits to their memoranda in support of and in opposition to the Defendant's motion.  <u>See</u> Docs. ##68 and 70.  Those documents are publications by the United States Government concerning charter schools, generally, and publications by the state of Ohio concerning its community schools.  The Sixth Circuit has recognized that, when ruling on a motion to dismiss under Rule 12(b)(6), it is permissible to consider government publications, without transforming the motion into one for summary judgment.  <u>City of Monroe Employees Retirement System v. Bridgetown Corp.</u>, 399 F.3d 651 (6th Cir. 2005). Moreover, no party has suggested that this Court cannot consider such an exhibit. Accordingly, the Court will consider all exhibits when ruling on the instant motion, without transforming it into one for summary judgment.

I.  Denial of Equal Protection by Disparate Treatment in Funding

With their First, Second and Fourth Claims for Relief, the Plaintiffs allege that they were subjected to disparate economic treatment, when compared to students in community schools.  In particular, in their First Claim for Relief, Plaintiffs allege that the Defendant has violated their rights under the Equal Protection Clause of the Fourteenth Amendment, by adopting a funding mechanism under which students at community schools are provided a larger per pupil share of the state formula aid than students in traditional public schools, which reduces the amount of such aid that is retained[6] by students in traditional public schools.  In their Second Claim for Relief, the Plaintiffs set forth a similar claim, alleging that the Defendant has denied them equal protection of the laws, because the funding mechanism for state formula aid treats minority students in community schools better than minority students who are attending traditional public schools.  In their Fourth Claim for Relief, the Plaintiffs allege that the funding scheme constitutes a deprivation of equal protection, because it forces students in traditional public school districts to increase their reliance on property taxes, while diminishing their share of state formula aid, and treating students at community schools more favorably in that regard.  As a means of analysis, this Court will initially set forth the substantive standards it must apply when ruling on the Defendant's request to dismiss these three claims.

The Defendant argues in her motion that the Court must apply the rational-basis test, rather than that of strict scrutiny or intermediate scrutiny.

_____

[6]State formula aid is transferred from the state to a local school district, which distributes a portion of that aid to charter schools.  That part of the aid that has not been distributed to a charter school is retained by the local school district.

Plaintiffs do not argue that this Court should apply strict scrutiny or intermediate scrutiny; however, they contend that the funding structure adopted by Ohio violates the Equal Protection Clause, under the rational-basis test. As a means of analysis, this Court will initially set forth its reasons for agreeing with Defendant that neither strict nor intermediate scrutiny is applicable. The Court will then turn to the parties' arguments in support of and in opposition to the proposition that the funding structure violates the Equal Protection Clause under the rational-basis test.

A court must apply strict scrutiny to an equal protection challenge, whenever a state draws a distinctions "which either burden[s] a fundamental right [or] target[s] a suspect class." Does v. Munoz, 507 F.3d 961, 966 (6th Cir. 2007) (internal quotation marks and citation omitted). Accord, Mass. Bd. of Retirement v. Murgia, 427 U.S. 307, 312 (1976). The claims currently before the Court are based upon allegations of economic discrimination, rather than discrimination upon the basis of race.[7] Therefore, these claims do not involve a suspect classification. Moreover, for reasons which follow, the Court concludes that Plaintiffs' First, Second and Fourth Claims for Relief do not implicate a fundamental right. In San Antonio Independent School Dist. v. Rodriguez, 411 U.S. 1 (1973), the Supreme Court concluded that using, inter alia, local property taxes to fund local schools did not violate the Equal Protection Clause, even though per pupil valuation greatly varied between the school districts. To reach that conclusion, the Court held that

---

[7]In their Second Claim for Relief, the Plaintiffs allege that they have been deprived of equal protection of the laws by Ohio's funding mechanism, as a result of minority students who attended community schools being treated better than minority students who remained in traditional public schools. Those allegations do not state a claim of disparate treatment on the basis of race, since Plaintiffs merely allege that one group of minority students has been treated more favorably than another such group.

education is not a fundamental right, since the Constitution does not explicitly or implicitly afford protection to education.  Id. at 34-35.  Since the Supreme Court held in San Antonio Independent School Dist. that education is not a fundamental right, this Court is compelled to conclude that strict judicial scrutiny is inapplicable.

In addition, this Court concludes that there is no basis for applying the intermediate level of scrutiny to these claims.  In Pyler v. Doe, 457 U.S. 202 (1982), the Supreme Court, while acknowledging that education is not a fundamental right, applied intermediate scrutiny to invalidate a Texas state aid program which had the effect of totally denying children of illegal immigrants a public education.  In Gwinn Area Community Schools v. State of Michigan, 741 F.2d 840 (6th Cir. 1984), the Sixth Circuit concluded that Pyler was limited to state statutes and funding programs which had the effect of completely excluding a group of students from public schools.  Thus, in Gwinn Area Community Schools, the Sixth Circuit rejected an equal protection challenge to the Michigan school funding scheme, which deducted a sum from the amount a school district would otherwise have received, if that school district was receiving aid from the federal government, in accordance with the federal Impact Aid Act, 20 U.S.C. § 236, et seq.  The Sixth Circuit concluded that the scheme met the requirements imposed by the rational-basis test.

Accordingly, this Court agrees with Defendant that neither strict nor intermediate scrutiny is applicable in this litigation, and it turns to the question of whether Ohio's funding scheme for charter schools passes constitutional muster under the rational-basis test.

In <u>F.C.C. v. Beach Communications, Inc.</u>, 508 U.S. 307 (1993), the

Supreme Court reviewed the rational basis test:

> Whether embodied in the Fourteenth Amendment or inferred from the Fifth, equal protection is not a license for courts to judge the wisdom, fairness, or logic of legislative choices. In areas of social and economic policy, a statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against [an] equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification. See <u>Sullivan v. Stroop</u>, 496 U.S. 478, 485 (1990); <u>Bowen v. Gilliard</u>, 483 U.S. 587, 600-603 (1987); <u>United States Railroad Retirement Bd. v. Fritz</u>, 449 U.S. 166, 174-179 (1980); <u>Dandridge v. Williams</u>, 397 U.S. 471, 484-485 (1970). Where there are "plausible reasons" for Congress' action, "our inquiry is at an end." <u>United States Railroad Retirement Bd. v. Fritz</u>, supra, 449 U.S., at 179. This standard of review is a paradigm of judicial restraint. "The Constitution presumes that, absent some reason to infer antipathy, even improvident decisions will eventually be rectified by the democratic process and that judicial intervention is generally unwarranted no matter how unwisely we may think a political branch has acted." <u>Vance v. Bradley</u>, 440 U.S. 93, 97 (1979) (footnote omitted).
>
> On rational-basis review, a classification in a statute such as the Cable Act comes to us bearing a strong presumption of validity, see <u>Lyng v. Automobile Workers</u>, 485 U.S. 360, 370 (1988), and those attacking the rationality of the legislative classification have the burden "to negative every conceivable basis which might support it," <u>Lehnhausen v. Lake Shore Auto Parts Co.</u>, 410 U.S. 356, 364 (1973) (internal quotation marks omitted). See also <u>Hodel v. Indiana</u>, 452 U.S. 314, 331-332 (1981). Moreover, because we never require a legislature to articulate its reasons for enacting a statute, it is entirely irrelevant for constitutional purposes whether the conceived reason for the challenged distinction actually motivated the legislature. <u>United States Railroad Retirement Bd. v. Fritz</u>, supra, 449 U.S., at 179. See <u>Flemming v. Nestor</u>, 363 U.S. 603, 612 (1960). Thus, the absence of "'legislative facts'" explaining the distinction "[o]n the record," 294 U.S.App.D.C., at 389, 959 F.2d, at 987, has no significance in rational-basis analysis. See <u>Nordlinger v. Hahn</u>, 505 U.S. 1, 15 (1992) (equal protection "does not demand for purposes of rational-basis review that a legislature or governing decisionmaker actually articulate at any time the purpose or rationale supporting its classification"). In other words, a legislative choice is not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data. See <u>Vance v. Bradley</u>, supra, 440 U.S., at 111. See also <u>Minnesota v. Clover Leaf Creamery Co.</u>, 449 U.S. 456, 464 (1981). "'Only by faithful

adherence to this guiding principle of judicial review of legislation is it possible to preserve to the legislative branch its rightful independence and its ability to function.'" <u>Lehnhausen</u>, supra, 410 U.S., at 365 (quoting <u>Carmichael v. Southern Coal & Coke Co.</u>, 301 U.S. 495, 510 (1937)).

<u>Id</u>. at 313-15 (footnote omitted).

Applying those standards to the dispute raised by these claims, i.e., whether the Plaintiffs have been denied equal protection by the adoption of a funding mechanism under which students at community schools are provided a larger share of the state formula aid than students in traditional public schools, which reduces the amount of such aid that is retained by students in traditional public schools, causes this Court to conclude that the funding mechanism passes constitutional muster.

There are eminently plausible reasons for adopting the funding mechanism in question. For instance, the Ohio legislature could have concluded that community schools needed more state aid than traditional public schools, since the former, unlike the latter, could not raise funds through property taxes. In addition, the Ohio legislature could have plausibly concluded that a traditional public school district should contribute some of the formula aid it receives from the state to the community schools located within that district, since those schools are bearing the expense of educating some of the students living therein. It bears emphasis that traditional public schools keep all funds raised through property taxes, regardless of how many of their students transfer to charter schools.[8] The Plaintiffs Third

---

[8] In the event that the amount of state formula aid that a traditional public school district was required to transfer to community schools exceeded the amount it received from the state, that district would be required to use revenue from property taxes to make up the difference. The Plaintiffs have not alleged that this has ever occurred.

Amended Complaint does not contain allegations that would "negative" either of those plausible reasons for adopting a funding mechanism which provides additional funds to students attending community schools.

In their Fourth Claim for Relief, the Plaintiffs allege that the funding mechanism is unconstitutional, because it increases the reliance of traditional public school districts on property taxes as a source of funding. Although the Ohio Supreme Court has held that relying on local property taxes as the primary source of funding for schools violates the Ohio constitution (DeRolph v. State, 78 Ohio St.3d 419, 678 N.E.2d 886 (1997)), the United States Supreme Court rejected a constitutional challenge under the Equal Protection Clause to the use of property taxes to fund education in San Antonio Independent School Dist. This litigation cannot be decided on the basis of the Ohio Constitution, since the Eleventh Amendment prohibits this Court from ordering this Defendant to comply with state law. Pennhurst State School & Hosp., supra. Therefore, that allegation does not support the Plaintiffs' claim that the funding mechanism violates the Equal Protection Clause.

Accordingly, the Court concludes that the First, Second and Fourth Claims for Relief in the Plaintiffs' Third Amended Complaint fail to state claims upon which relief can be granted and that, therefore, they must be dismissed.


II.  Denial of Equal Protection by Racial Discrimination

In their Third Claim for Relief, the Plaintiffs allege that Ohio's community school statutes create two classes of students who attend traditional schools, to wit: predominantly minority students who attend traditional public schools in

districts that are required to share state formula aid with community schools; and predominately white students who attend traditional public schools in districts in which community schools are not permitted to be located and, therefore, are not required to share state formula aid with such schools. The Plaintiffs contend that the Ohio General Assembly has intentionally discriminated on the basis of the race of students attending traditional public schools, since predominately minority students attend such schools in those districts which are required to share their state formula aid with community schools.

The Defendant argues that those claims must be dismissed for failure to state a claim upon which relief can be granted, because "the text and history of Ohio's community school laws belie the existence of discriminatory intent, a necessary element of any race based[,] equal protection claim." Defendant's Memorandum in Support of Motion to Dismiss (Doc. #68) at 18. As an initial matter, this Court agrees with Defendant that discriminatory intent is a necessary element of a claim predicated upon the Equal Protection Clause. See Washington v. Davis, 426 U.S. 229 (1976); Horner v. Kentucky High School Athletic Ass'n, 43 F.3d 265 (6th Cir. 1994).[9] However, for reasons which follow, this Court is unable to agree with Defendant that the text and history of community school laws belie the existence of discriminatory intent.

_____

[9]The Supreme Court has held that "all racial classifications [imposed by government] ... must be analyzed by a reviewing court under strict scrutiny." Adarand Constructors, Inc. v. Peña, 515 U.S. 200, 227 (1995). Under strict scrutiny, the government has the burden of proving that racial classifications "are narrowly tailored measures that further compelling governmental interests." Id. Since the Defendant has not argued that the funding mechanism is a narrowly tailored measure that furthers a compelling state interest, this Court does not consider that question.

To support her assertion that the text and history of Ohio's community school statutes belie the existence of discriminatory intent, Defendant points to what she claims is evidence that those statutes are racially neutral, which she argues negates any inference of discriminatory intent. This Court agrees with Defendant that the existence of a legitimate, racially neutral purpose for a law constitutes evidence that it was not motivated by a discriminatory intent. Washington v. Davis.[10] The allegations in the Plaintiffs' Third Amended Complaint (Doc. #66) and the exhibits supplied by the parties cause this Court to conclude that Ohio's community school statutes are not facially neutral.

As an initial matter, it bears emphasis that those statutes treat the "big eight school districts" differently than any others. Only in those school districts can charter schools be located, regardless of whether the districts are under an academic emergency or in a state of academic watch. Charter schools cannot be located in any other school district in Ohio, unless the school district is in such an academic crisis. In addition, the "big eight school districts," with the exception of

---

[10]The decision of the Supreme Court in Washington v. Davis grew out of a class action lawsuit brought by unsuccessful, minority applicants for positions in the Washington, D.C. Police Department. The unsuccessful applicants claimed that testing their verbal skills had a disparate impact on minority applicants. The Court held that the disparate impact test should not be applied to resolve discrimination claims brought under the equal protection component of the Due Process Clause of the Fifth Amendment. See Bolling v. Sharpe, 347 U.S. 497 (1954) (holding that the Due Process Clause of the Fifth Amendment contains an equal protection component prohibiting the United States from invidiously discriminating between individuals or groups). The Washington v. Davis Court also held that, since the test was neutral on its face, its disparate impact on minority applicants did not warrant the conclusion that it was a purposefully discriminatory device.

Canton, have more minority students than non-minority students.[11]  The Defendant argues that the absence of racially discriminatory intent in the adoption of the funding mechanism, is demonstrated by the fact that the "big eight school districts" were singled out because of entrenched poverty in those districts.  As is indicated, one of the criteria for inclusion as a "big eight school district" is that 30% of their students qualify for the Ohio Works First, needs based anti-poverty program.  This Court accepts for present purposes Defendant's premise that "poverty presents strong educational challenges" (Doc. #68 at 19).  However, a desire to eliminate poverty does not necessarily negate discriminatory intent, since the "big eight school districts" were also limited to those with student bodies with at least 12,000 students, thus eliminating small, predominantly white school districts with high rates of poverty from the same treatment as the "big eight school districts."  Moreover, the legislature decided to define the "big eight school districts" by reference to their poverty rates and attendance levels for fiscal year 1997.  Ohio Rev. Code § 3314.02(A)(4).  As a consequence, predominantly white school districts which, according to current poverty rates and attendance levels would qualify under § 3314.02(A)(4) as a "big eight school district," are excluded from being deemed such districts because they did not so qualify 12 years ago. Thus, the Ohio General Assembly has decided that only the predominantly minority students attending traditional public schools in the "big eight school districts" shall

---

[11]Defendant points out that 30% of the of the students in the "big eight school districts" are non-minority.  Bearing in mind that this Court is currently ruling on a motion to dismiss, rather than ruling on a motion seeking summary judgment or on the merits after a trial, the fact that 30% of the students in those school districts are non-minority, does not mean that the allegations in Plaintiffs' Third Amended Complaint fail to rise above the level of speculation.

have charter schools. with the concomitant reduction in state formula aid, regardless of whether those districts are under an academic emergency or in a state of academic watch.  Simply stated, the foregoing does not evidence a racially neutral funding mechanism.

The Defendant also argues that the Plaintiffs' allegations of discriminatory intent are negated by provisions in Ohio's community school laws, which expressly prohibit discrimination.  In support of that assertion, the Defendant relies upon Alexander v. Youngstown Bd. of Education, 675 F.2d 787 (6th Cir. 1982). Therein, the Sixth Circuit held that the evidence supported the District Court's finding that the defendants had not operated a segregated school system.  In reaching that conclusion, the Sixth Circuit noted, inter alia, that the District Court had refused to draw an inference of segregative intent from certain boundary line changes made during the 1970's, in part, because the Superintendent, who had ordered the changes, had expressly committed himself to improve the racial balance in Youngstown's schools.  Simply stated, nothing in Alexander remotely suggests that a governmental entity can free itself from a race discrimination lawsuit, merely by pointing to a provision in a statute outlawing discrimination.

In sum, ruling on the motion to dismiss, this Court disagrees with Defendant that the text and history of Ohio's community school statutes belie an intent to discriminate.  Accordingly, the Court overrules the Defendant's Motion to Dismiss (Doc. #67), as it relates to Plaintiffs' Third Claim for Relief, a claim of race discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment.

III.  Deprivation of Property without Due Process (Procedural Due Process)

The Plaintiffs contend that they were deprived of property without due process of law, as a result of the diversion of funds from the traditional education of their children, without notice and an opportunity to be heard.  The Sixth Circuit recently reiterated that in order to succeed on a procedural due process claim, the "plaintiff must show (1) that it was deprived of a protected liberty or property interest, and (2) that such deprivation occurred without the requisite due process of law.  Thomas v. Cohen, 304 F.3d 563, 576 (6th Cir. 2002)."  Club Italia Soccer & Sports Organization, Inc. v. Charter Tp. of Shelby, Mich., 470 F.3d 286, 296 (6th Cir. 2006).  The Defendant argues that the Court must dismiss Plaintiffs' procedural due process claim, because they were not deprived of a protected property interest and, if so, they did not suffer such a deprivation without due process of law.  As a means of analysis, the Court will address the Defendant's two arguments in the above order.


1.  Property Interest

The Court will initially review the standards it must apply in determining whether the Plaintiffs were deprived of a protected property interest.  In Bd. of Regents v. Roth, 408 U.S. 564, 577 (1972), the Supreme Court set forth the essential elements of a procedural due process claim:

> Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.

Id. at 577.  Accord Club Italia Soccer & Sports Organization, Inc., 470 F.3d at 297.

Plaintiffs argue that they had a protected property interest in the state funds necessary for their education.  However, the Plaintiffs have failed to cite any decision in which an Ohio court has concluded that such a property interest exists.  Indeed, this Court could not locate a decision by any Ohio court, even mentioning the question.  Under those circumstances, this Court is forced to conclude that a protected property interest in state funds necessary for an education does not exist under Ohio law.  Consequently, the Plaintiffs cannot establish the first element of their procedural due process claim.


2.  Deprivation of Property without the Requisite Due Process of Law

Moreover, even if the Plaintiffs had a protected property interest, they did not suffer a deprivation of that interest, without the process that was due.  The Court's conclusion in that regard is based upon the decision of the Supreme Court in Bi-Metallic Investment Co. v. State Board of Equalization, 239 U.S. 441 (1915).  Therein, Justice Oliver Wendell Holmes, writing for a unanimous court, held that the plaintiff had not been deprived of property without due process of law, as a result of the defendants' decision to increase of the valuation of all taxable property in Denver by 40%.[12]  The plaintiff was not given notice or an opportunity to be heard, before that decision became effective.  Nevertheless, the Supreme Court held that the plaintiff was not denied property without due process of law,

_____

[12]The 40% increase in valuation had occurred as a result of the legislative process, rather than as a result of individual re-appraisals.

because the increased valuation applied generally and that, therefore, the prior legislative process was all the process that was due. The Sixth recently applied the rule established by the <u>Bi-Metallic</u> Court in <u>Tennessee Scrap Dealers Ass'n v. Bredesen</u>,556 F.3d 442 (6th Cir. 2009). Therein, the plaintiffs challenged the constitutionality of an ordinance adopted by the City of Memphis, which required that scrap dealers "tag and hold" scrap metal they received for a period of 10 days. Plaintiffs argued, <u>inter alia</u>, that the ordinance deprived them of property without due process of law. The Sixth Circuit rejected that argument, writing:

> The scrap dealers also argue that the Memphis ordinance deprives them of property without due process of law by requiring them to set aside the scrap metal they acquire for ten days. As the district court recognized, this argument is a non-starter: even if "tag and hold" did deprive the scrap dealers of property, they have received all the process they are entitled to because the deprivation was legislative in character. <u>See</u> <u>Bi-Metallic Inv. Co. v. State Bd. of Equalization</u>, 239 U.S. 441 (1915).

<u>Id</u>. at 457-58. Similarly, herein, this Court concludes that the Plaintiffs received all process that was due, because community school statutes are legislative in character and that, therefore, any deprivation of property was also legislative.

Accordingly, the Court sustains Defendant's Motion to Dismiss (Doc. #67), as it relates to Plaintiff's claim that they were deprived of procedural due process, the Fifth Claim for Relief.


Based upon the foregoing, the Court sustains in part and overrules in part Defendant's Motion to Dismiss (Doc. #67). That motion is sustained as it relates

to Plaintiffs' First, Second, Fourth and Fifth Claims for Relief, and overruled as it relates to the Third Claim for Relief in their Third Amended Complaint (Doc. #66).


March 30, 2009

                                        /s/ Walter Herbert Rice
                                     WALTER HERBERT RICE, JUDGE
                                     UNITED STATES DISTRICT COURT

Copies to:

Counsel of Record.